IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MOISES MORALES, et al., ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No.: 13-cv-07572 |
| vs. ) | |
| ) | Hon. Amy J. St. Eve |
| ) | |
| CRAIG FINDLEY, et al., ) | |
| ) | |
| Defendants. ) | |

**FINAL SETTLEMENT AGREEMENT**

On October 22, 2013, Plaintiffs filed the above-captioned suit, asserting constitutional challenges to the parole revocation process as it pertains to people who have been paroled from the Illinois Department of Corrections. Defendants are the Chairman of the Illinois Prisoner Review Board and the Director of the Illinois Department of Corrections, both sued in their official capacities ("Defendants"). In order to resolve the allegations in the Complaint, the Parties have entered into the following Settlement Agreement.

**A. SETTLEMENT CLASS & DEFINITIONS**

1. The Parties agree that to avoid costly and protracted litigation, the claims against the Defendants should be resolved by this Settlement Agreement. By entering into this Settlement Agreement, or by taking any action in accordance with it, the Defendants do not admit any of the allegations contained in Plaintiffs' complaint, nor do Defendants admit liability for any purposes. The parties intend for this Settlement Agreement to bind Defendants, their assigns, and their successors and the plaintiff class.

2. The Parties agree to a settlement class comprised of all people who, while on parole/Mandatory Supervised Release ("MSR"), are supervised by the Illinois Department of

1

Corrections (hereinafter "IDOC") and who now or in the future will be subject to parole revocation proceedings conducted by the IDOC and the Illinois Prisoner Review Board (hereinafter "PRB"). The settlement class is limited to adults and does not include any persons encompassed by the class definition in *M.H. v. Monreal, et al.*, 12-cv-8523.

3. "Parolee" refers to any individual who, while on parole/MSR is supervised by the IDOC, and who is subject to parole revocation proceedings conducted by the IDOC and the PRB.

4. "Parole Violation Report" is a report generated by the IDOC that includes the allegations of parole violations against the Parolee.

5. "Notice of Rights" refers to the written notice attached to this Agreement that explains the class members' rights.

6. "Alleged Parole Violator" (hereafter "APV") refers to any individual who is committed to IDOC and:

   (i) Has been released from an IDOC facility on parole or Mandatory Supervised Release (MSR) status (hereafter "parole"); and

   (ii) Has been or is subject to being charged by IDOC with a violation of the conditions of parole and faces a continued risk of reconfinement as a result of parole revocation proceedings.

7. "Qualified APV" is defined as an APV who:

   (i) Requests appointed counsel;

   (ii) Is indigent, meaning that retaining an attorney would foreclose the Parolee from providing for life's necessities; and

   (iii) Meets at least one of the following factors, as determined by Defendant PRB in accordance with the procedures described in this Agreement:

   a. Has a timely and colorable claim that he or she has not committed the alleged violation of the conditions upon which he or she is at liberty; or

   b. Has a claim that, even if the violation is a matter of public record or is uncontested, there are substantial reasons which justify or mitigate the violation

2

and make revocation inappropriate, and the reasons are complex or otherwise difficult to develop or present.

8. Any APV who does not meet the foregoing definition of a "Qualified APV" is an "Ineligible APV."

9. "Served Status" shall be defined as the time at which a parole violation warrant is lodged or placed on record with the Illinois law enforcement entity that has physical custody of the Parolee.

### B. CONDUCT OF PRELIMINARY AND FINAL PAROLE REVOCATION HEARINGS

1. Defendant IDOC will provide Parolees, within five (5) calendar days of the parole violation warrant going into 'served' status, with a notice of the alleged parole violation(s) and the Notice of Rights, attached as Exhibit A. The notice of the alleged parole violation(s) shall set forth the alleged parole violations using simple, clear and concise language. At the time of service, the IDOC will provide each parolee with the Notice of Rights form (Exhibit A) and inquire whether the parolee wishes to have it read to him or her. Upon a parolee's request, the IDOC shall read the Notice of Rights form to the parolee. If the parolee chooses not to have the Notice of Rights form read to him or her, the IDOC shall provide the parolee with an opportunity to review the form prior to making any decisions regarding his or her parole revocation hearing(s).

2. At the time the Parole Violation Report and the Notice of Rights are served, Parolees may choose one of the following options: (1) a waiver of the preliminary parole revocation hearing; (2) a preliminary parole revocation hearing, which will be scheduled (a) within ten business days of the warrant going into Served Status, if the offender does not request to be screened for an appointed attorney or the offender is located in Cook County or (b) within twenty (20) business days of the warrant going into Served Status, if the offender is located outside of Cook County and requests to be screened for an appointed attorney; or (3) a postponement of the

3

preliminary parole revocation hearing for up to thirty (30) calendar days from the date the warrant goes into Served Status.

3. Unless the parolee requests a postponement of the preliminary hearing or waives the preliminary hearing, the Defendants shall make a reasonable effort to schedule the parolee's preliminary hearing for within ten business days of the warrant going into served status, regardless of the parolee's location and regardless of whether the parolee has requested counsel. After this agreement has been approved and has been in effect for twelve months, the Monitor shall assess progress toward this goal and report his or her findings to the parties.

4. Parolees who do not waive the preliminary parole revocation hearing and who, for unforeseen reasons, including concurrent court appearances, medical issues, or other unavoidable circumstances beyond the control of Defendants, are not available for their hearing within the time frame set forth in the paragraph above shall have their hearing postponed until the next available hearing date.

5. At the time of service, the Parolee may complete the Preliminary Parole Revocation Hearing Form ("Hearing Form") (Exhibit B) to provide witnesses' names, contact information, the general area(s) of questioning and/or specific questions for the witnesses, and attorney contact information. The Parolee shall return the Hearing Form to a Defendant IDOC employee as soon as possible. Upon receipt of a completed Hearing Form, Defendant IDOC staff will forward the Hearing Form to the Defendant PRB prior to the Parolee's preliminary hearing.

6. Defendant PRB shall make available all evidence in its possession related to the alleged violation of parole to the Parolees and/or their attorneys no less than two business days prior to the scheduled beginning of the preliminary hearing. If PRB subsequently obtains additional evidence, it shall provide that evidence to the Parolees and/or their attorneys as soon as practical after its receipt by the PRB. Such subsequently obtained evidence provided to the

4

Parolees and/or their attorneys less than one business day prior to the start of the preliminary hearing shall not be considered, unless it is a charging instrument, relates to the disposition of criminal charges, and/or relates to a finding of probable cause in a criminal case.

7. Defendant PRB shall provide each Parolee who does not waive a preliminary parole hearing with a preliminary parole hearing as follows:

   a. Defendant PRB shall provide a fair, impartial, and independent Hearing Officer who has knowledge of the parole revocation process, the requirements of due process and the relevant legal standards to preside over each hearing.

   b. The Hearing Officer is required to disqualify himself or herself if he or she was the parole officer who made the report of parole violations or recommended revocation; or if he or she supervises the parole officer who made the report of parole violations or recommended revocation; or if he or she has independent knowledge of disputed evidentiary facts related to the revocation. The Hearing Officer shall not be disqualified merely because he or she assessed the parolee to determine the parolee's eligibility for appointed counsel

   c. The Hearing Officer is required to determine whether or not probable cause exists that the Parolee committed the alleged violations set forth in the Parole Violation Report. In making this determination, the Hearing Officer must exercise independent judgment and must evaluate the reliability and credibility of the evidence that is before him or her. The Hearing Officer may make a determination only on evidence that is presented at the hearing (and not on information presented only at the assessment for eligibility for appointed counsel) and relevant to the alleged violations of Parolee's conditions of parole.

   d. Defendant IDOC shall provide a location for the preliminary parole hearings that are held in Defendant IDOC's facilities which allows the Hearing Officer to conduct an appropriate hearing.

   e. During the preliminary parole revocation hearing, a Parolee may request a continuance for good cause of up to thirty (30) calendar days from the date of that hearing.

   f. The Parolee may request that, prior to the preliminary parole revocation hearing, the Hearing Officer attempt to contact via telephone any witnesses listed on the Hearing Form by the parolee. Upon making contact with the proposed witness, the Hearing Officer shall identify him or herself and briefly explain the reason for the call. The Hearing Officer shall inform the witness that the witness may give their statement to the Hearing Officer over the phone. If the witness chooses to provide a statement to the Hearing Officer, the Hearing Officer will summarize the witness' statement on the Hearing Form. Information provided by the witness shall be considered by the Hearing Officer in rendering his or her decision during the hearing.

g. If a Parolee identifies a witness for the first time during the preliminary revocation hearing, the Hearing Officer shall attempt to contact the witness or witnesses by telephone during the hearing. If the witness or witnesses are unavailable, the Parolee may request that the hearing be postponed until the next hearing date for purposes of contacting the witness.

h. Parolees or their attorneys, if they are represented, have the right to cross examine adverse witnesses (unless the Hearing Officer specifically finds good cause for not allowing the confrontation of adverse witnesses), speak on their own behalf, and provide relevant witness testimony and documentary evidence.

i. The evidence presented to the Hearing Officer will become part of the official record of each parole revocation case, and shall be included in the file provided to the PRB Board Members making the final revocation decision.

j. Qualified APVs shall be appointed counsel, as set forth in Part C below.

k. Prior to the start of the hearing session, the Hearing Officer will ensure that each parolee is read the admonition contained in Exhibit C and provided a copy of the admonition. If feasible, the Hearing Officer may read the admonition to the parolees as a group.

l. At the start of each hearing, the Hearing Officer will ask each parolee who is not represented by counsel if the parolee understood the admonition.

m. If the Hearing Officer finds probable cause, the Parolee shall have the right to request release (lifting of the parole violation warrant) from custody pending a final parole revocation hearing and to present evidence in support of this request. After considering all of this evidence, the Hearing Officer will make a written recommendation on the Report of Findings form which shall be communicated to the PRB.

n. The Hearing Officer will provide Parolees or their attorneys, if they are represented, with a copy of the written determination within one business day of the preliminary revocation hearing.

o. The written determination shall also include a summary or digest of what occurred at the hearing (including the parolees' position and the substance of the evidence presented during the hearing), whether probable cause for each charge and/or technical violation was found, the reasons for the hearing officer's determination and any recommendation regarding release pending the final revocation hearing.

8. Defendant PRB shall make reasonable efforts to ensure that all Parolees at IDOC Reception and Classification Centers are presented for a final revocation hearing at the next scheduled PRB hearing date and/or within sixty (60) calendar days of the date of service, whichever is sooner. The PRB may not unilaterally postpone a hearing date solely because it is awaiting the

result of a pending court case or additional information about the offense. All final parole revocation hearings must occur within ninety (90) calendar days of the date of service unless the parole violator requests a continuance, refuses to appear, is required by writ to appear in court or other legal proceedings, is unavailable due to medical or mental health reasons, is not at the Department of Corrections facility where the hearings are conducted, or because the hearing cannot occur within 90 calendar days due to other extraordinary circumstances.

9. Defendant PRB shall provide each Parolee with a final parole revocation hearing as follows:

   a. The PRB shall ensure that each final parole revocation hearing is heard by at least one member and that each decision is issued through a panel of at least three members. The PRB shall ensure that each parole hearing is a structured proceeding, but hearings may be informal.

   b. PRB Board Members are required to determine whether there is proof by a preponderance of the evidence that the Parolee committed the alleged violation(s). Each PRB Board Member must exercise independent judgment and must make this evaluation based solely on the reliability and credibility of the evidence presented during the final revocation hearing.

   c. In determining whether a violation occurred, PRB members may not consider charges for which no probable cause was found.

   d. Defendant IDOC shall provide a location for the parole revocation hearings that allows the PRB members to conduct an appropriate hearing.

   e. During the parole revocation hearings, Defendant PRB shall permit Parolees to cross examine adverse witnesses (unless the Presiding Officer specifically finds good cause for not allowing the confrontation of adverse witnesses), speak on their own behalf, and provide witness testimony and documentary evidence to the PRB.

   f. Prior to the start of the hearing session, a PRB Board Member or PRB staff will ensure that each parolee is read the admonition contained in Exhibit D and is provided a copy of the admonition. If feasible, the PRB Board Member or PRB staff will read the admonition to the parolees as a group.

   g. Defendant PRB will provide Parolees and their attorneys (if applicable) with a written explanation of the PRB's final parole revocation hearing decisions as soon as administratively feasible, but without unreasonable delay. The written explanation from

7

the final revocation hearing must include a statement by the factfinders as to the evidence relied upon and (if applicable) the reasons for revoking parole.

    h. If the PRB Board Members determine that there is proof by a preponderance of the evidence that the Parolee committed the alleged violation(s), or if the Parolee was found guilty of a new criminal offense, the Parolee shall be entitled to present mitigating evidence explaining why revocation is inappropriate and/or why a sanction other than reimprisonment should be imposed on the Parolee. After considering all of this evidence, the PRB Board Members presiding over the hearing shall determine whether sufficient evidence exists to weigh against reimprisonment and/or a revocation. Defendant PRB shall record the outcome of this vote in the written findings and in the hearing record, and shall also include a summary of the evidence presented during this portion of the hearing in the written findings and in the hearing record.

10. An alleged violator who could be prosecuted for criminal charges in the parole violation report may invoke the Fifth Amendment and refuse to testify regarding those criminal allegations. The Hearing Officer or Board Member shall not compel the alleged violator to testify regarding the criminal charges once the violator chooses not to testify. An alleged violator's decision not to testify at the preliminary and/or final revocation hearing will not constitute evidence of a violation.

11. The Plaintiffs' counsel shall develop a handbook of legal resources and information aimed at providing parolees with the resources necessary to meaningfully participate in the parole revocation process. Defendants shall be responsible for providing each parolee with a copy of the handbook. Plaintiffs shall develop, produce, and copy the handbooks at their own expense.

12. Defendant IDOC will make its best efforts consistent with the existing rules, policies, and procedures, to provide offenders in its facilities who face parole revocation hearings with access to means of communicating, including by telephone and mail, with individuals and entities in a position to provide relevant eye-witness or character testimony or pertinent documentary evidence during the parole revocation process. The Monitor shall evaluate whether offenders in DOC facilities who face parole revocation hearings are afforded adequate access to means of communicating with potential witnesses and to pertinent documentary evidence, and

8

shall report his findings to the parties.

## C. APPOINTMENT OF COUNSEL FOR QUALIFIED APV'S

1. Defendant PRB shall appoint counsel ("appointed counsel") to represent each Qualified APV, pursuant to the terms of this Settlement Agreement.

2. Qualified APVs may waive appointed counsel or may choose to retain alternate counsel. In the event a Qualified APV elects not to be represented by appointed counsel, neither the PRB nor the IDOC shall have any obligation to pay for alternate counsel.

3. The Notice of Rights referenced in A.5 shall inform the APV that he or she may retain a private attorney at his or her own expense or may request that counsel be appointed to him or her at no cost to him or her if he or she is indigent and meets certain other conditions, and shall inform the APV that he or she must request an appointed counsel in writing, must establish indigence to be considered for appointed counsel, and may choose to waive any right to counsel.

4. If the APV requests appointed counsel at the time of service, the IDOC employee effecting service will provide the requisite request and indigency forms that the APV must complete.

5. Defendant PRB will develop forms for an APV to request appointed counsel and for an indigency assessment. Once completed, the request and/or indigency forms will be submitted to Defendant PRB for further assessment. Defendant PRB may investigate an APV's financial status to determine the accuracy of representations provided. Any appointment of counsel will be terminated if the APV's indigency representations are determined to be false.

6. If an APV requests appointed counsel as set forth above and establishes indigence, a PRB Hearing Officer or PRB Board Member will assess the APV's eligibility for appointed counsel in accordance with the U.S. Supreme Court's decision in *Gagnon v. Scarpelli*, 411 U.S. 778, 790-91 (1973), or in accordance with any subsequent decision of the U.S. Supreme Court

9

which abrogates or otherwise modifies its decision in *Gagnon*. The Hearing Officer or Board Member shall have "considerable discretion" in conducting the screening. *See id.* at 790. The appointment-of-counsel assessment will be made on a case-by-case basis within the exercise of sound discretion. *Gagnon*, 411 U.S. at 790-91 (rejecting "inflexible constitutional rule with respect to the requirement of counsel" in favor of a decision made "on a case-by-case basis in the exercise of a sound discretion by the state authority charged with the responsibility for administering the probation and parole system").

7. If the APV does not make a request at the time of service to be screened for an appointed attorney, but later makes such a request, the APV's preliminary hearing will be rescheduled to a date within twenty (20) business days of the request. However, if the APV waives his or her preliminary hearing or is not entitled to a preliminary hearing (for example, if probable cause of a new criminal violation is found in a criminal proceeding, the parole violation is a matter of public record or is uncontested, or if the APV has been found guilty of or pleads guilty to a new criminal violation) or if the APV did not request to be screened for an appointed attorney at his or her preliminary hearing or was denied appointment of counsel at his or her preliminary hearing, a PRB Hearing Officer or Board Member may assess the APV for purposes of determining whether he or she is entitled to counsel for the final revocation hearing.

8. The appointment-of-counsel assessment will occur through an interactive dialogue between the APV and the PRB Hearing Officer or PRB Board Member. However, the PRB may appoint counsel for an APV without engaging in such a dialogue. Defendant PRB shall, in consultation with class counsel and the monitor, develop an appropriate form for use in assessing a parolee's eligibility for appointed counsel. The PRB hearing officer or PRB Board member must complete this form during each appointment of counsel assessment.

10

9. To determine whether counsel should be appointed as to the preliminary hearing for an indigent APV who has requested counsel and has not waived a preliminary hearing or been rendered ineligible for a preliminary hearing (see C.7), the PRB Hearing Officer will consider whether the APV has a timely and colorable claim that he or she has not committed the alleged violation of the conditions of his or her mandatory supervised release or parole. Especially in doubtful cases, where it is unclear whether the APV meets the aforementioned standard, the PRB Hearing Officer will consider whether the APV appears incapable of speaking effectively for himself or herself. If the PRB Hearing Officer determines at the preliminary hearing that the APV is a Qualified APV after this assessment, the preliminary hearing will be rescheduled (up to 20 business days later) for the appointment of counsel, and counsel will be appointed for both the preliminary and final parole revocation proceedings.

10. To determine whether counsel should be appointed as to a final revocation hearing for an indigent APV who has requested counsel and has not previously been found to be a Qualified APV:

> a. If the appointment-of-counsel assessment set forth in C.9 has already been conducted, and probable cause was found at the preliminary hearing, the PRB Hearing Officer or PRB Board member will then consider whether counsel should be appointed for the final revocation hearing. The PRB Hearing Officer or PRB Board member will consider whether the APV has a timely and colorable claim (i) that he or she has not committed the alleged violation of the conditions of mandatory supervised release or parole; or (ii) that, even if the violation is a matter of public record or is uncontested, there are substantial reasons which justified or mitigated the violation and make revocation inappropriate, and that the reasons are complex or otherwise difficult to develop or present. Especially in doubtful cases, in which it is unclear whether the APV meets (i) or (ii) in the foregoing sentence, the PRB Hearing Officer or Board Member will consider whether the APV appears incapable of speaking effectively for himself or herself.
>
> If counsel is appointed after this assessment, the final parole hearing will be set on the next available docket.
>
> b. If the APV does not have a preliminary hearing (see C.7) or was found ineligible for the appointment of counsel, the PRB Hearing Officer or PRB Board member will determine whether counsel should be appointed for the final revocation hearing. The PRB Hearing

Officer or PRB Board member will consider whether the APV has a timely and colorable claim (i) that he or she has not committed the alleged violation of the conditions of mandatory supervised release or parole; or (ii) that, even if the violation is a matter of public record or is uncontested, there are substantial reasons which justified or mitigated the violation and make revocation inappropriate, and that the reasons are complex or otherwise difficult to develop or present. Especially in doubtful cases, in which it is unclear whether the APV meets (i) or (ii) in the foregoing sentence, the PRB Hearing Officer or PRB Board member will consider whether the APV appears incapable of speaking effectively for himself or herself.

11. At Defendant PRB's discretion, Defendant PRB may choose to forego the two-step analysis set forth in Paragraphs C.9 and C.10 (a) and instead perform the analysis set forth in C.10 (b) for each indigent APV who requests counsel, at the preliminary or final revocation hearing stage.

12. Counsel shall be appointed for all Qualified APVs no less than two business days prior to a preliminary or final parole revocation hearing. The Monitor's responsibilities shall include evaluating compliance with the time frames set forth in this agreement.

13. Defendants will, pursuant to any relevant policies or procedures, reasonably accommodate requests by APVs who are represented by counsel to communicate with counsel in advance of their preliminary and final parole revocation hearings. Subject to any relevant policies or procedures, APVs may communicate confidentially with their counsel.

14. The Defendant PRB will compensate or otherwise secure the services of attorneys to represent every Qualified APV through every stage of the parole revocation process. Defendant PRB shall ensure that Counsel for eligible parolees are compensated or contracted for the legal service reasonably required to represent Parolees during parole revocation hearings including pre-hearing investigations, client interviews, representation during preliminary and final parole revocation hearings and any appeals or requests for reconsideration. Defendant PRB shall establish and publish in advance of any appointment of private counsel the rates it will pay such counsel who are appointed to represent Qualified

APVs. Defendant PRB may establish a maximum amount it will pay appointed private counsel for representing any Qualified APV, and it may establish a rate it will pay appointed counsel for representing more than one Qualified APV in hearings held on the same day or on consecutive days. To reduce costs, Defendant PRB may arrange to secure volunteer private counsel and supervised 711 law students who may serve pro bono. Law students who are eligible under Illinois Supreme Court Rule 711 and who are under the supervision of a licensed attorney may be appointed to represent Qualified APVs without compensation.

15. Defendants shall develop appropriate forms for use in determining eligibility for appointed counsel. However, the decision as to whether a parolee is eligible for appointed counsel shall be made on a case-by-case basis in the exercise of a sound discretion by the PRB.

16. If the alleged violation is a matter of public record or is uncontested, Defendant PRB shall notify the APV or his or her attorney in writing that the violation is established and that a final revocation hearing will be held only to determine what, if any, sanction to impose. At such a final revocation hearing, the violation shall be presumed to have occurred, and the PRB Hearing Officer need not consider evidence related to whether it occurred.

17. Representation by appointed counsel shall terminate at the conclusion of the hearings before the PRB and any appeal to the PRB.

18. IDOC may have counsel present at revocation proceedings acting in a prosecutorial role only if the parolee is represented by counsel.

### D. MONITORING

1. The parties agree that David Muhammad will monitor the Defendants' compliance with the terms of this Agreement.

2. The Defendants agree, subject to appropriation, to pay for all agreed upon costs associated with said monitoring pursuant to a reasonable budget to be agreed upon by and

13

between the Defendants and the Monitor.

3. The general principles for monitoring shall include:

   i) The Monitor's role shall include: observing a representative sample of parole revocation proceedings, including the service of parole revocation reports, the attorney eligibility screening process and preliminary and final revocation hearings; interviewing agents/employees of the defendants and class members; reviewing documents related to the parole revocation process, gathering of appropriate data and statistics; conducting hearing observations; assessing and reporting to the parties on whether the objectives of the Settlement Agreement are being met and to what extent the Defendants have achieved compliance with each provision of this agreement; and, where disputes between the parties occur or where there appears to be non-compliance, assisting to resolve such matters in the most expeditious and non-adversarial fashion possible;

   ii) The Monitor shall strive to minimize interference with the mission of the Defendants while at the same time having reasonable access to class members, hearings, staff, and documents as set forth below. The Monitor shall also strive to minimize the expense of monitoring.

4. The Defendants shall provide the Monitor with reasonable access to the class members and to the hearings governed by this Settlement Agreement. The Monitor may interview PRB Hearing Officers or Board Members, but shall not have access to their deliberations. The Monitor shall provide the PRB and DOC legal offices with at least forty-eight (48) hours' notice prior to any visit to any IDOC facility.

5. The Monitor shall have reasonable opportunities to interview appointed counsel and members of the Defendants' staff who have an essential role in executing the requirements of this Settlement Agreement. Counsel for Defendants and Class Counsel may be present at interviews of staff and contractors.

6. The Defendants shall provide all records related to the Defendants' compliance with this Settlement Agreement to the Monitor upon request, except that the Monitor shall not have access to parolees' medical or mental health records, or to other records deemed confidential by state or federal law, unless the monitor furnishes the authorization or release necessary to receive

14

those records.

7. Within six months of the Court's approval of this Agreement, the Monitor shall provide the parties with a brief letter regarding the Defendants' progress in implementing the requirements of this Agreement, and make himself or herself available for a teleconference with the parties to discuss the letter.

8. The Monitor shall prepare and submit a report to the parties twelve months after this Agreement is approved by the Court and every six months thereafter for the life of this Agreement.

9. In his or her reports, the Monitor shall evaluate the status of the Defendants' compliance with the relevant provisions of the Settlement Agreement using the following standards: Substantial Compliance and Non-Compliance. For purposes of this Settlement Agreement, Defendants are in Substantial Compliance as to a substantive provision if any violation is minor or occasional, and is neither systemic nor serious. If a serious violation of the Settlement Agreement occurs, Defendants are in Substantial Compliance if they promptly identify the violation and develop and implement a timely and appropriate remedy that results in Substantial Compliance.

10. If the Monitor believes at any time that Defendants are not in Substantial Compliance with any substantive provision of this Settlement Agreement, the Monitor shall promptly notify the parties in writing and recommend action steps that, if completed, would attain compliance ("Compliance Steps"). There shall be a rebuttable presumption that Defendants have achieved substantial compliance if they have implemented the Compliance Steps.

11. Plaintiffs' counsel (and law students acting under the supervision of Plaintiffs' counsel) shall be entitled to observe parole revocation hearings and speak to parolees, after providing a minimum of forty-eight (48) hours' notice to IDOC. Counsel shall also be permitted to have confidential legal visits with members of the plaintiff class identified during such

observations. All such visits will be subject to reasonable security measures and the subject facility's legal visit scheduling process so that they will not interfere with either the confidentiality of such visits or the operations of the IDOC facility in which the parolee is housed. Nothing in this subsection shall be construed to limit any right of access Plaintiffs' counsel may otherwise have pursuant to statute or otherwise. Upon written request, Defendant PRB shall provide Plaintiffs' counsel with information available to it regarding the dates and locations of upcoming parole revocation hearings. Upon written request, Defendants shall provide Plaintiffs' counsel with a reasonable amount of parole violation reports, hearing records, and reports of finding. If Plaintiffs believe that additional types of documents are necessary to evaluate Defendants' substantial compliance with this agreement, Plaintiffs shall submit a written request to Defendants and explain why they are necessary for their review. If Defendants refuse, the parties shall consult with the monitor regarding whether such documents shall be produced. The Monitor and Plaintiffs' Counsel shall comply with all applicable federal and state laws with regard the confidentiality of the class members' records and information.

12. Reports, documents, data, and other information provided by the Defendants to the Monitor will also be available to Plaintiffs' counsel on a confidential basis and for use in this matter only.

13. In the event that the designated monitor is no longer able or willing to serve as the Monitor, the parties shall attempt to jointly select another Monitor. If the parties cannot agree on a replacement Monitor, the parties shall request the assistance of an independent, third party mediator. The parties shall share the cost of any such mediation.

### E. DISPUTE RESOLUTION

1. If Plaintiffs believe that the Defendants are not in substantial compliance with any provision of this Settlement Agreement, Plaintiffs shall provide the Defendants, in writing, specific

reasons why they believe that the Defendants are not in substantial compliance with such provision or provisions, referencing the specific provision or provisions. Plaintiffs may not allege that the Defendants are not in Substantial Compliance based on minor or isolated delays in compliance. To the extent Plaintiffs rely on observations or opinions of the Monitor to support an allegation that the Defendants are not in substantial compliance, Plaintiffs shall make a reference to the written reports of the Monitor and to portions thereof which support Plaintiff's belief. The parties shall conduct good faith discussions, which may involve the Monitor, to resolve any dispute related to whether Defendants are in Substantial Compliance with this Settlement Agreement.

2. After the Monitor's first status report, to be submitted to the parties twelve months after this Agreement is approved by the Court, if Defendants and Plaintiffs are not successful in their efforts to resolve any dispute, the Plaintiffs may terminate this Settlement Agreement.

3. This is an agreement between the parties and is not subject to enforcement by the federal court through a petition for contempt or otherwise.

**F.     IMPLEMENTATION AND TERMINATION**

1. The Parties recognize that this Settlement Agreement will require the procurement of services by the PRB. Accordingly, Defendants will use their best efforts to implement this agreement within a reasonable time, but, unless Defendants show good cause for any extension, no later than nine (9) months from the date this Settlement Agreement is entered. If the Defendants require an extension, they will notify Plaintiffs' counsel and state the length of the extension required.

2. This Settlement Agreement constitutes the entire agreement of the parties, supersedes all prior agreements, representations, negotiations, and undertakings in this litigation not set forth or incorporated herein.

3. This Settlement Agreement shall terminate 24 months after the date of its approval by the Court.

4. Plaintiffs may also terminate this Agreement nine months after its approval by the Court if Defendants are unable to begin implementing the requirements of this Agreement due to a lack of funding.

5. Defendants agree to pay to Plaintiffs' counsel the sum of $225,000 in full settlement of all of Plaintiffs' claims for attorneys' fees and costs associated with this litigation and Settlement Agreement. The Plaintiffs and Plaintiffs' counsel shall not seek any additional or future attorneys' fees or costs beyond those agreed to in this paragraph, including, but not limited to, any that may be related to any future enforcement, compliance, or other work associated with litigation and settlement matters related to this litigation.

6. Upon approval of this Settlement Agreement, the Court will enter judgment dismissing the action without prejudice.

Agreed to by the Parties as indicated by their or their counsel's signature below:

For the Plaintiff Class:

/s/ [signature]
Date: January 13, 2017

Sheila A. Bedi
Alexa Van Brunt
Vanessa Del Valle
Roderick and Solange MacArthur Justice Center
Northwestern University School of Law
375 East Chicago Avenue
Chicago, Illinois 60611
(312) 503-1336

Alan Mills
Uptown People's Law Center
4413 N. Sheridan Road
Chicago, IL 60640
(773) 769-1410


For the Defendants:

/s/ [signature]
Date: January 13, 2017

Craig Findley, Chairman of the
Illinois Prisoner Review Board

/s/ [signature: John R. Baldwin]  1
Date: January 13, 2017

John Baldwin, Director of the
Illinois Department of Corrections